UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR00107 JAR/NCC |
| | ) | |
| SACOREY CLARK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER, MEMORANDUM AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing in this matter; and having had an opportunity to evaluate the credibility of the witness presented and to observe his behavior, the undersigned makes the following finds of fact and conclusions of law.

## BACKGROUND

Defendant Sacorey Clark is charged in a one-count Indictment with being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Defendant was initially represented by appointed counsel in this matter. On March 18, 2016, the undersigned heard argument to address defendant's intent to represent himself in this case. The undersigned granted defendant's motion after inquiry and appointed standby counsel for defendant. Defendant has since filed *pro se* numerous motions (Doc. Nos. 29, 30, 34, 42, 49, 52, 64-65, 71-72, and 79), and requests for information directed to the Court and standby counsel that reach beyond the typical scope of discovery to which he is entitled, and the requirements of standby

counsel to act on his behalf.  *See* (Doc. Nos. 43, 56, and 57).  The government has responded. (Doc. Nos. 41, 44, 53 and 54).  Defendant has filed additional Motions in Opposition, which will be considered by the undersigned as defendant Clark's Replies to the Responses filed by the United States.[1]  (Doc. No. 31, 41, 44, 49, 53-54, and 81).  Defendant has asked for many continuances of these proceedings for a variety of reasons.[2]  The matters are now fully briefed.

## FINDINGS OF FACT

On February 1, 2016, at around 8:00 a.m., St. Louis Metropolitan Police Officer Nicholas Henderson was on patrol in North Saint Louis in a marked Chevy Tahoe police vehicle with Officer Andy Brown, when they received a request to respond over the police dispatch radio. Officer Henderson has extensive police training and experience.  Officer Henderson was a police officer for approximately two years at the time he testified.  His is a certified graduate of the St. Louis Police Academy and he holds a bachelor's degree in criminal justice.  His experience includes a ten-year background in school and retail security prior to his present work.  He has also served as a military police officer for six years with the Army National Guard.

The communication to Officers Henderson and Brown on February 1st regarding this case occurred after police dispatch received a 911 call from an eyewitness of an assault in progress.  Def. Ex. C. Thereafter, three other 911 calls from other eyewitnesses were received about the same incident.  It is the department's practice for the dispatchers to transcribe the calls into a "ticket" that officers receive while on patrol with details about 911 calls.  Officers

---

[1] Defendant suggests, among other measures, that a government witness be subjected to a lie detector test because he anticipates perjured testimony to be offered at trial.  (Doc. No. 49, at pp. 1-2; Doc. No. 52).  The government objects to such a measure.

[2] Defendant has asked for additional time to file pretrial motions for reasons including his lack of access to writing paper and pens while a pretrial detainee, and the need for additional time to conduct legal research in support of his motion to suppress evidence.  (Doc. Nos. 48, 50).

Henderson and Brown received reports of the three subsequent 911 calls to their "ticket" in real-time.

Each caller described the assailant as a black male wearing a dark hoodie and blue jeans. At least two callers also described the victim as a black female, possibly with light skin. A witness described the female as wearing a purple shirt. More than one caller also described her outer wear. In addition to the 911 reports of the assault, one caller relayed that he believed that the male subject may be armed. One 911 caller asked dispatch if he should intervene. He was told not to do so. At least two of the callers observed the man push or hold the woman against a building, and one said that the man had the woman in a choke hold. There were no reports that any witness saw the male subject with a gun.

Other officers who patrol the same area also heard the dispatch call and they also responded.

Officers Henderson and Brown drove to the area of North Broadway and De Soto. When these officers arrived a few minutes later, they saw a black male wearing a black hoodie near a Saveway Foods store, and they observed the man walk hastily northbound on North Broadway away from the intersection of North Broadway and De Soto. Officer Henderson saw a woman at the intersection wearing a purple shirt and standing about 30 feet from the man. The man, who was later identified as defendant Sacorey Clark, had his hands in his pockets. Clark was the only person of the five or six people present who matched the description that officers received from dispatch. Officers curbed their vehicle behind Clark in front of the Saveway Foods.

Officer Henderson observed that Clark was looking back at them as he walked away with his hands in his pockets. Based on his experience, Officer Henderson believed Clark to be the possible assailant because of his demeanor, coupled with the description and the position of his

hands.  Officer Henderson also believed that Clark was attempting to flee.  Officers did not communicate with anyone else at the scene.

The uniformed officers approached Clark and asked him to take his hands out of his pockets.  Clark complied.  Officer Henderson explained to Clark that they were investigating an assault call based on information from 911.  Officer Henderson asked Clark to put his hands in the air, which Clark did do.  They approached him and patted him down for weapons.  Officer Henderson began his pat down search at Clark's waistband, which was his common practice.  Officer Henderson felt the outline of what he believed to be a weapon in Clark's pants.  Officer Henderson handcuffed Clark and continued the search.  He thereafter seized a small handgun from Clark's right pants' pocket.

Officer Brown advised Clark of his *Miranda* rights in the presence of Officer Henderson.  Officer Brown told Clark the following:

> "You have the right to remain silent.  Anything you say can and will be used against you in court.  You have the right to a lawyer and to have him or her with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning if you so desire.  You can decide at any time to exercise these rights and not answer questions or make any statements."

And then, "Do you understand these rights and do you wish to make a statement?"

Clark told officers that he understood his rights.  Officer Brown asked him if he was a convicted felon.  Clark said that he was.  Officers arrested Clark for unlawful use of a weapon, and they conducted a further search of him incident to the arrest.  Officers found a small bag containing what they believed to be narcotics.  They also conducted a computer check to confirm that Clark was a convicted felon.

Officer Lorenza Clark also responded to the scene as did other officers.  Officer Clark transported defendant Clark to the North Patrol holdover where he said he wanted to make a

written statement.  Prior to making the written statement, Clark was advised of his *Miranda*

rights again by way of the police department's form.  *See* (Gov't Ex. 1).  Officer Brown arrived

at the police station and witnessed Clark sign and write his initials on the form with an "S.C." at

the end of each sentence explaining his rights.  It reads, in part:

> I understand that I have the right to remain silent.
> I understand that anything I say can and will be used against me in court.
> I understand that I have the right to a lawyer and have him/her with me while I'm being
> questioned.
> I understand that if I cannot afford to hire a lawyer one will be appointed for me before
> any questioning, if I so desire.
> I understand that I can decide at any time to exercise my rights and not answer any
> questions or make any statements.

Clark affirmed that he understood his rights and he penned a statement.

## DISCUSSION

### Motion To Dismiss (Doc. Nos. 30 and 34)

####     A.    The Court Has Personal Jurisdiction Over Clark And Subject Matter
            Jurisdiction Over The Case

Clark claims two jurisdictional defects in which he attests that: 1) the Indictment fails to

state a claim upon which relief can be granted, and 2) there is no subject matter jurisdiction over

him.  Clark further contends that the United States is a corporate entity and, therefore, is not a

proper party plaintiff due to a lack of *corpus delecti*.  Additionally, under the heading, "Facts

Must Stand As True In Both Private And Public Record," defendant contends that the United

States lacks "sufficient facts and only provides tactics[.]"   His argument as to "facts and tactics"

is difficult to discern.  The government has presented facts at an evidentiary hearing held on

November 18, 2016, *albeit* after defendant filed his motion.  Clark also had an opportunity to

cross examine the witnesses against him and to present his own evidence.  As such, this point

should be denied.

5

Moreover, the court has "personal jurisdiction over [the defendant] by virtue of [the defendant] having been brought before it on a federal indictment charging a violation of federal law." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).  *See also, United States v. Stuart*, 689 F.2d 759, 762 (8th Cir. 1982); *United States v. James*, 328 F.3d 953 (7th Cir. 2003)(dicta); *United States v. Toader*, 409 Fed. Appx. 9, 2010 WL 4780362 (C.A. 7 (Ill.)).   The court also has subject matter jurisdiction in this case.  "[T]here can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).  According to 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  The Eighth Circuit has noted "[p]ursuant to section 3231, federal district courts possess original jurisdiction over all violations of federal law." *United States v. Hayes*, 574 F.3d 460, 471 (8th Cir. 2009).  Defendant is charged with a violation of federal criminal law and subject matter jurisdiction is proper in this court.  *United States v. Foster*, 443 F.3d 978, 981 (8th Cir. 2006); *United States v. Schmitt*, 784 F.2d 880, 882 (8th Cir. 1986).   This point should be denied.

To the extent that Clark alternatively claims that he is entitled to a dismissal on the grounds that the government has failed to provide him with discovery, including material subject to *Brady* v. *Maryland*, 373 U.S. 83 (1963), or that the Court did not provide him with other information to supplement his motion to dismiss, his contentions are unsubstantiated and should be denied.[3]  The *Brady* exculpatory rule extends to evidence that may affect the credibility of

---

[3] On June 20, 2016, defendant mailed a letter addressed to the Clerk of Court requesting a copy of this Court's jury service and selection plan, among other documents, so that he could "challenge the Grand Jury on the grounds that it was not lawful."  (Doc. Nos. 32 and 34).  No formal motion was filed by defendant.  Further, standby counsel for defendant proffered, on November 11, 2016, that he subpoenaed witnesses on defendant's behalf and that he pursued

government witnesses.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  *United States v. Bagley*, 473 U.S. 667 (1985).  Evidence is not material simply because it would have "help[ed] a defendant prepare for trial."  *United States v. Aleman*, 548 F.3d 1158, 1164 (8th Cir. 2008) (citing *United States v. Agurs*, 427 U.S. 97, 112 n.20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).  If the government has *Brady* material it must disclose it to defendant.  In this case, the government has stated that it has met or exceeded its discovery obligations and there is no known *Brady* material.  *See* (Doc. No. 74, *Transcript of Hearing*, at p. 11).  To the extent that Clark makes a request for *Brady/Giglio* and Rule 16 material, his motion is granted.  Clark's Motions to supplement (Doc. Nos. 72 and 79) should be denied in all other respects.

## B.    Standard Of Review For A Motion To Dismiss

To be legally sufficient on its face, an indictment must contain all the essential elements of the offense(s) charged, it must fairly inform the defendant of the charge(s) against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.  U.S. Const. Amends. V and VI; Fed. R. Crim. P. 7(c)(1); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Hance*, 501 F.3d 900, 906 (8th Cir. 2007); *United States v. Just*, 74 F.3d 902, 903-04 (8th Cir. 1996); *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993).  An indictment is insufficient only if a substantive, essential element is omitted.  *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).  Moreover, "[a]n indictment should not be read in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the

---

other avenues of investigation for Clark.  (Doc. No. 74, *Transcript of Hearing*, at pp. 22-23).  On July 25, 2016, the undersigned provided copies of some material found on the Court's website to defendant in consideration of his *pro se* status and his complaints that he had limited access to the internet.  Accordingly, the record does not support his claim that he did not have access to the requested information and to the government's evidence against him or to any exculpatory evidence that might exist.

offense.'" *United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998).  However, "[i]f an essential element of the charge has been omitted from the indictment, the omission is not cured by the bare citation of the charging statute." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1998).  With these principals in mind, the undersigned concludes that Clark's Motion to Dismiss the Indictment should be denied.

In addition, when a defendant challenges an indictment on a motion to dismiss, the court must accept the government's allegations in the indictment as true.  *United States v. Birbragher*, 603 F.3d 478, 481 (8th Cir. 2010).  *See also United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)(providing that, in considering a motion to dismiss an indictment, "we accept the government's allegations as true, without reference to allegations outside the indicting document.").  Therefore, the undersigned is limited to a review of the Indictment, case law and the arguments of the parties in making this determination.

The statute provides:

 (g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

...

to ... possess in or affecting commerce, any firearm or ammunition ...

18 U.S.C. § 922(g)(1).  The elements of this offense are: "(1) previous conviction of a crime punishable by a term of imprisonment exceeding one year, (2) knowing possession of a firearm, and (3) the firearm was in or affecting interstate commerce."  *United States v. Montgomery*, 701 F.3d 1218, 1221 (8th Cir. 2012).

8

Construing Clark's claim liberally, he argues that the Indictment fails to state an essential element because he did not participate in the interstate or foreign transport of the firearm he is alleged to have possessed on February 1, 2016.  (Doc. No. 71).  His reading of the law is incorrect.  *See, e.g., United States v. Garcia–Hernandez*, 803 F.3d 994, 997 (citing *United States v. Thompson*, 365 Fed. Appx. 42, 43 (8th Cir. 2010) (unpublished) (ruling that the district court did not err "plainly or otherwise, in instructing the jury" because: "The interstate commerce nexus in section 922(g) merely provides the basis for federal jurisdiction, and knowledge of this element is not required.")).  *Scarborough v. United States*, 431 U.S. 563, 566-67 (1977) (resolving circuit court split in affirming that the interstate nexus requirement of the possession offense is satisfied with proof that the firearm previously traveled in interstate commerce).  The Indictment in this case includes sufficient factual descriptions of the alleged illegal activity, which provide sufficient notice of the charge and meet all of the elements of § 922(g).

Having made this determination, the court finds the Indictment is a plain, concise and definite statement of the essential facts constituting the charged offense, alleges all the essential elements of the offense charged and complies in all respects with Rule 7(c), Federal Rule of Criminal Procedure.  The Indictment closely tracks the language of the underlying statute and, therefore, is legally sufficient on its face.  *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009); *see also United States v. Oakie*, 12 F.3d 1436, 1440 (8th Cir. 1993).

Finally, to the extent that Clark also asserts a general challenge to the sufficiency of the government's evidence by way of his motion to dismiss such an argument is not persuasive. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."  *See*, *e.g.*, *United States v. DeLaurentis*, 230 F.3d 659, 660 (3rd Cir. 2000)(alteration added) (holding that Fed. R. Crim. P. 12(b)(2) authorizes

dismissal of an indictment on the grounds that its allegations are not sufficient to charge an offense but not on the grounds that the evidence is not sufficient to prove the charges). "Where an indictment quotes the language of the statute and includes the date, place and nature of the illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Doe*, 572 F.3d 1162, 1173-1174 (10th Cir. 2009) (quoting *United States v. Redcorn*, 328 F.3d 727, 733 (10th Cir. 2008)). In quoting the Third Circuit in *DeLaurentis*, the Eighth Circuit opined,

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29.… [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be.

*United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)(quoting *DeLaurentis*, 230 F.3d at 661)(alterations in original). In this case, the Indictment speaks for itself; it tracks the statutory language, identifies the federal law underlying the charge, alleges each of the essential elements, and specifies the approximate time period of the offense. The United States has drafted the Indictment in such a way, when reasonably read, it sufficiently alleges a violation of 18 U.S.C. § 922(g).

If the government fails to prove at trial that defendant was a previously convicted felon in possession of a firearm on the date alleged, then he may be entitled to an acquittal; however, it is not grounds to dismiss the Indictment.

## Motion For Bill Of Particulars (Doc. No. 42)

Rule 7(f), Fed. R. Crim. P., allows a court to order the government to file a bill of particulars. The rule requires that a defendant seek a bill before or within 14 days of arraignment

or "at a later time" if the court permits.  A bill of particulars serves to inform a defendant of the nature of the charges against him with sufficient precision that he is able to reasonably prepare for trial, and to avoid the threat of surprise at trial.  A bill of particulars should not act as a discovery tool.  *United States v. Wessels*, 12 F.3d 746 (8th Cir. 1993).  In other words, it is not a side-door mechanism for a defendant to discover the names of witnesses, evidentiary details, or the government's theory of the case.  *United States v. Trevino*, Case No. 4:05C690 RWS, 2007 WL 1174852, at *8 (E.D. Mo. Apr. 20, 2007).  Courts have broad discretion to grant or deny a motion for bill of particulars.  *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993).  Clark moves for a bill of particulars well after the 14-day deadline contemplated by the rule.  Although defendant is filing his pretrial motions *pro se*, this case is not complex.  The matter involves one defendant and one count.  The undersigned does not agree that Clark is entitled to a bill of particulars.  The Indictment sets forth the essential elements of the case and the government has stated it has turned over all discovery to him.  *See* (Gov't Response, Doc. No. 44, at 3).

Defendant argues that the Indictment is conclusory and it fails to inform him of sufficient facts to adequately prepare for his defense and to determine his participation in the alleged events.  He further challenges the Indictment as one that can be construed to "allow the fact finder to conclude that the distinction between direct and indirect effects of intrastate transactions upon interstate commerce is not a fundamental one."  (Motion for Bill of Particulars, at p. 2)(emphasis in original).  This last argument is difficult to discern.  It is clear, however, that Clark seeks to attack the sufficiency of the government's evidence against him.  These inquiries are for the jury and he may raise these challenges at trial.  They are not appropriate matters for a bill of particulars and his motion is denied.

**Motions To Suppress Physical Evidence and Statements (Doc. Nos. 51, 65 and 71)[4]**

Clark argued at the evidentiary hearing and has claimed in his written "affidavits of facts" filed with the Court that he was handcuffed and searched without probable cause on February 1, 2016. He further argues that a police officer involved in his arrest should be subjected to a lie detector test because he disputes the timing of handcuffs being placed upon him during the events of this case. Defendant also argues that the officers could not rely on the 911 callers because such information was uncorroborated. The evidence adduced, including Clark's exhibits offered at the hearing, does not support his contentions.[5]

## I.    The Stop Was Valid

The court's analysis must begin by making a determination as to "the nature of the encounter" between the police officers and Clark. In *United States v. Poitier*, 818 F.2d 679, 682 (8th Cir. 1987), the Eighth Circuit noted that,

> Supreme Court jurisprudence has placed police-citizen encounters into three tiers or categories: First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourth Amendment. Second, there are the so-called *Terry*-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

*Id.*

### A.    Consensual Encounters

As recognized by the Eighth Circuit in *Poitier*, it is well settled that not all police encounters with individuals implicate the Fourth Amendment. For example, a scenario in which

---

[4] Clark's filed a statement of facts under the heading of "Affidavit of Fact." *See* (Doc. 51).
[5] The undersigned has considered Clark's arguments that he raised in his "affidavits of facts" in support of his motions to suppress and notes that these affidavits by themselves are not evidence. Several other arguments raised by Clark in which he challenges the "chain of custody" and the validity of the firearms trace report are more appropriately left for the trial court's consideration.

a police officer approaches a person in a public place and poses questions to that person who is willing to listen does not transform the encounter into a seizure simply because the inquiry comes from law enforcement. *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion). *See also Florida v. Rodriguez*, 469 U.S. 1, 5 (1984); *United States v. Drayton*, 536 U.S. 194, 200 (2002)("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable searches and seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."). "Mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Voluntary answers to these questions may be used in criminal proceedings as evidence. And the specific facts of a police-citizen encounter must be considered. *United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir. 2003)(question of seizure determined on case-by-case basis, as "no litmus-paper test exists for distinguishing a consensual encounter from a seizure."), *cert. denied*, 540 U.S. 962 (2003), citing *United States v. Ninety One Thousand Nine Hundred Sixty Dollars*, 897 F.2d 1457, 1461 (8th Cir. 1990). Efforts by the police to communicate with a person on the street, like in this case, may become a Fourth Amendment seizure if by means of physical force or show of authority the person's freedom of movement is restrained to the extent that, considering the totality of the circumstances, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

Clark asserts that a police officer has the right to avoid dangerous situations. It follows, presumably, that the officers would not have stopped him if they did not show up at the scene. Officer Henderson explained that it would be unprofessional to not respond. And such a concept belies the very purpose of police officers having a patrol assignment. Accordingly, a response to

13

911 calls about an assault is well within the purview of any police officer's routine community caretaking function.  The undersigned is not convinced that Clark's position on this point addresses the question that is central to his motion to suppress: whether the investigatory stop and his temporary detention were supported by reasonable suspicion considering the totality of the circumstances.  The parties do not dispute that Officers Henderson and Brown moved quickly to assert their authority over Clark and to restrain his movement.  The undersigned finds, consistent with *Poitier, supra*, and other relevant case law that the *Terry* stop and search was valid under the totality of the circumstances.

## B.    Investigative Detentions

### i. *Terry* stop

The second tier of encounters considered by the Eighth Circuit in *Poitier* constitute brief investigatory detentions, which do trigger Fourth Amendment safeguards, and are lawful if the police have reasonable suspicion that criminal activity is afoot.  *Terry*, 392 U.S. 1 at 30.  "Reasonable suspicion requires 'that the [officers'] suspicion be based upon particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime [has been] committed.'"  *United States v. Lopez–Mendoza*, 601 F.3d 861, 865 (8th Cir. 2010) (quoting *United States v. Jones*, 269 F.3d 919, 927 (8th Cir. 2001)).  We determine whether such facts and inferences support a reasonable suspicion of criminal activity based on "the totality of the circumstances."  *Bell*, 480 F.3d at 863 (quoting *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (internal quotation marks omitted)).  Police observations of, and information available to, them may concern matters that are by themselves wholly lawful, *Terry v. Ohio*, 392 U.S. at 27-28, but when considered together justify some further investigation.  *Id.* at 22.  "[A]s part of a lawful Terry stop, officers may take any

14

measures that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *Id.* (quoting *Hensley*, 469 U.S. at 235, 105 S.Ct. 675). "[W]hen officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004). *See United States v. Danielson*, 728 F.2d 1143, 1146–47 (8th Cir. 1984) (concluding investigatory detention did not become an arrest at the point officers drew their weapons before approaching the vehicle occupied by suspected armed bank robbers). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal objective justification for an investigatory [detention]." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004).

Additionally, police officers may conduct a pat down search of the suspect if the officer "has a reasonable, articulable suspicion that the suspect may be armed and presently dangerous." *Terry*, 392 U.S. at 30. *See also United States v. Muhammad*, 604 F.3d 1022, 1026 (8th Cir. 2010). "Because the 'sole justification' for such a search is the protection of the officer and others, its scope must be confined to a search reasonably designed to discover concealed weapons." *Id.* (quoting *Terry*, 392 U.S. at 29, 88 S.Ct. 1868).

Here, officers had reports of a male suspect who was alleged to have recently and violently assaulted a woman. Clark fit the description; the other people present did not fit the description, and he was in near proximity and seen walking away hastily with his hands in his pockets when Officers Henderson and Brown approached the scene. These circumstances meet the requirement that there must be "specific and articulable facts," upon which officers acted. *Terry*, 392 U.S. at 21. Additionally, the photographs submitted at the hearing show commercial

15

structures and wide open views from Interstate 70 westbound and the adjacent side streets. *See* (Def. Exs. A and B). In *United States v. Farnell*, 701 F.3d 256, 262 (8th Cir. 2012), the Eighth Circuit reasoned "a person's physical appearance and location relative to a known crime scene can provide an objectively reasonable basis for an officer to stop that person, even where the officer's observation of the person is 'brief and from a distance.'" *See also United States v. Phillips*, 679 F.3d 995, 997–98 (8th Cir. 2012). Officers Henderson and Brown were justified in making such a stop and conducting a protective frisk for officer safety based on their reasonable suspicion that criminal activity was afoot. *See United States v. Davis*, 202 F.3d 1060, 1062 (8th Cir. 2000).

### ii. Expansion of the *Terry* stop

"An investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force.'" *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (quoting *United States v. Navarrete–Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). While officers should employ the least intrusive means reasonably available to verify or dispel their suspicions, *see Florida v. Royer*, 460 U.S. 491 at 500, they may take any additional steps that are "reasonably necessary to protect their personal safety ... during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). Police officers reasonably may handcuff a suspect during the course of a *Terry* stop to protect their personal safety and maintain the status quo. *United States v. Martinez*, 462 F.3d 903 (8th Cir. 2006); *United States v. Navarrete–Barron*, 192 F.3d 786, 791 (8th Cir. 1999). Such actions do not constitute an arrest. *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006).

Upon approaching and patting down Clark, the officers' decision to handcuff him after Officer Henderson felt the outline of a gun in Clark's pants was reasonable and done to protect

their safety and to maintain the status quo. *Id.* Moreover, the record does not support Clark's assertion about the chronology of when officers placed him in handcuffs. Given their safety concerns, officers were allowed to handcuff Clark. *United States v. Morgan*, 729 F.3d 1086 (8th Cir. 2013); *Fisher,* 364 F.3d at 973. Thus, the brief detention and constraint of Clark was part of a lawful *Terry* stop and officers could pat him down for weapons based on the totality of the circumstances. *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983).

### C.    Arrests

The third tier of police encounters that implicate the Fourth Amendment are the arrests of suspects. Arrests must be based on probable cause. The law recognizes that there is a judicial preference for an arrest to be based on a finding of probable cause by a judicial officer but there is no constitutional requirement that a warrant be obtained before an arrest can be made. The courts look at whether an officer objectively had probable cause for the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

"Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). In making this determination, "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Mendoza,*

17

421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); *see also United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008).

The proper standard for determining probable cause is whether the arresting officer reasonably believes an individual has committed or is committing a crime.   *United States v. Durile Lee Brown*, 49 F.3d 1346 (8th Cir. 1995).  More specifically,

> [i]n determining whether probable cause exists to make a warrantless
> arrest a court will consider whether the totality of facts based on
> reasonably trustworthy information would justify a prudent person in
> believing the individual arrested had committed . . . an offense.  Probable
> cause is to be assessed in terms of the circumstances confronting a
> reasonably cautious police officer at the time of the arrest, and the
> arresting officer is entitled to consider the circumstances, including
> arguably innocent conduct, in light of his training and experience.  "[T]he
> probability, and not the prima facie showing, of criminal activity is the
> standard of probable cause."

*Hannah v. City of Overland, MO*, 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting *United States v. Wallraff*, 705 F.2d 980, 990 (8th Cir. 1983)).  *See also United States v. Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007) (for a finding of probable cause "there need only be a 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity'"), quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005).  The criminal activity can be for an offense involving a felony, misdemeanor or infraction.  *See United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010).  *See United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (recognizing that "'[w]hen multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication'") (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)).  Headlong and unprovoked flight in a high-crime area upon the approach of police officers is reason to suspect that those fleeing are wrongdoers.  *Illinois v. Wardlow*, 528 U.S. 119 at 124

(2000); *United States v. Raibley*, 243 F.3d 1069, 1075 (7th Cir. 2001).  In determining whether a police officer had probable cause, the court must consider the "totality of the circumstances as 'understood by those versed in the field of law enforcement.'"  *United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

The undersigned notes that there is no evidence that Clark ran from the scene or that this area is a high-crime neighborhood.  Officer Henderson's initial observations were that Clark walked hastily away northbound on North Broadway, which he considered to be evidence of flight, given his experience and the totality of the circumstances.   *See Gray*, 213 F.3d at 1000.  And the initial report from police dispatch directed the officers to respond to an assault in progress, not far from their proximate distance.  Moreover, the 911 callers were generally consistent in their descriptions of the incident.  *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013)(reasoning that two cooperating sources with consistent information provided to police corroborated one another).

In this case, officers found a gun in the pocket of Clark's pants as part of the valid *Terry* pat-down search.  They asked him if he was a convicted felon and he affirmed that he was.  Officers confirmed this information with a records check.  Thus, with all of these factors taken together, the court finds the officers could objectively draw inferences under the totality of the circumstances that there was probable cause that Clark committed an offense, such as unlawful possession of a firearm or the possession of marijuana.  This case is one in which facts unfolded such that an investigatory stop reasonably escalated "the factual basis from one permitting an investigatory stop to one warranting an arrest." *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983); *see also Martinez*, 462 F.3d at 907, 910 (holding in the alternative that even if

handcuffing a suspect did convert the detention into an arrest, the arrest was justified by probable cause).  Therefore, the arrest was valid.

## II.    The Search Was Valid

Because officers were permitted to conduct a pat-down search or protective frisk for weapons to maintain officer safety, they were authorized to seize evidence during the course of the valid *Terry* stop and pat down.  *Muhammad*, 604 F.3d at 1026.

Additionally, even if they had not found the firearm during the pat down of defendant, officers would have found the firearm and other contraband as part of a search incident to his valid arrest.  Under the Fourth Amendment, "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the warrant requirement.  *Missouri v. McNeely*, ⸺ U.S. ⸺, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013).  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  *See also United States v. Chartier*, 772 F.3d 539 (8th Cir. 2014).  This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Gant*, 556 U.S. at 338.  *United States v. Robinson*, 414 U.S. 218, 235 (1973)(a search incident to a lawful arrest "is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that [a]mendment").  "The search of an arrestee's person has long been upheld as reasonable under the Fourth Amendment, and we see no reason to depart from this notion here."  *United States v. Pratt*, 355 F.3d 1119, 1124 (8th Cir. 2004).  *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).  Therefore, the firearm and other contraband should not be suppressed.

### III.    Defendant Waived his Right To Remain Silent

Under the Fifth Amendment, "[n]o person … shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amed. V.  When a defendant is both in custody and interrogated, he must be advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  "Officers must provide Miranda warnings to suspects in custody because 'the inherently coercive nature of custodial interrogation blurs the line between voluntary and involuntary statements."  *United States v. Diaz*, 736 F.3d 1143, 1148 (8th Cir. 2013) (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011) (internal quotation marks omitted)).  *See United States v. Crisolis–Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) ("Interrogation in the Miranda context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." (quotation omitted)).

Clark was given his *Miranda* warnings for the first time at the scene and again later at the police station.  There is no evidence that Clark was under the influence of drugs or alcohol at the time he made his statement, or that he suffered any mental infirmity.  There is no evidence that he was unable to understand the nature of the questions posed to him or why he was asked those questions.  All of this suggests that Clark understood what was said to him and his responses to questions were intelligent and freely given.  Clark does not allege that there was coercion used to elicit his answers to incriminating questions and there is no evidence that officers used such tactics during their interview of him at the police station.  The undersigned finds that Clark affirmed that he understood his rights and he waived his *Miranda* rights when he spoke with police officers.

To the extent that Clark argues that the government should not be allowed to seek admission of his post-*Miranda* statement because it occurred after an illegal arrest, this argument

21

should be denied.  *See Brown v. Illinois*, 422 U.S. 590, 592-93, 598 (1975)(holding *Miranda* warnings were insufficient to extinguish the taint of an illegal arrest after police broke into a defendant's apartment without probable cause or a warrant, made an arrest and elicited incriminating statements).  In *Brown v. Illinois*, the Supreme Court crafted the attenuation exception to the general rule that illegally-obtained confessions cannot be used by the government at trial.  In other words, such evidence may be admissible upon a judicial determination that sufficient time passed between the invalid arrest and a later confession. Courts consider: 1) the time elapsed between the constitutional violation and the acquisition of the evidence; 2) the presence of intervening circumstances, and 3) the purpose and flagrancy of the official misconduct.  *Id*. at 603.  *See also Kaupp v. Texas*, 538 U.S. 626, 633 (2003). Because Clark's arrest was based on probable cause, this case is not like *Brown v. Illinois* and its progeny and further analysis of this exception is not required here.

### Pro Se Post Suppression Hearing Motion Based Upon Evidence Adduced At The Evidentiary Hearing And/Or Brief (Doc. No. 79)

Clark claims that he has a constitutional right to obtain all communications between the police department's dispatchers and police officers, along with information that would identify work schedules, patrol routes, vehicle assignments, travel logs and dispatch "tickets" about his arrest.  He argues that such information will prove that false statements were made by the government's witness or others involved.  Clark also claims that he was misled about the existence of police records or a lack thereof.  These claims are not supported by the record, and he cites to no law that such information is material to his defense.

The undersigned is unaware of a constitutional requirement that the government must provide discovery in a criminal case.  *See Weatherford v. Bursey*, 429 U.S. 559 (1977). However, there are other considerations that warrant disclosure of some classes of information to

ensure that every defendant receives a fair trial.  The Fifth Amendment to the U.S. Constitution provides that no person shall be deprived of liberty without due process.  U.S. Const. Amend. V. As discussed above, *Brady v. Maryland* holds that the prosecution has an affirmative duty to disclose evidence that is both favorable to an accused and material either to guilt or punishment, regardless of the good faith or bad faith of the prosecution.  373 U.S. at 87.  To not so do violates due process.  *Id.  See also Smith v. Cain*, ___ U.S.___, 132 S. Ct. 627, 629-30 (2012); *Cone v. Bell*, 556 U.S. 449, 451-52 (2009); *Kyles v. Whitley*, 514 U.S. 434, 432 (1995); *United States v. Bagley*, 473 U.S. 667, 669 (1985)*; United States v. Agurs*, 427 U.S. 97, 111 n.17 (1976)*; United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008).  Clark has not established that the information he seeks is material to his defense.

Additionally, the record reveals that some requested information—relevant to his claim that Officers Henderson and Brown were not accurate or truthful in their police report or at the hearing—was disclosed to him.  Clark received audio recordings of some dispatch/officer communications which he offered into evidence at the suppression hearing and which were received.  Def. Ex. C.  The audio recordings support Officer Henderson's testimony that dispatch issued a request to respond to an assault in progress, and more than one 911 caller observed the police arrive.  Clark conducted a cross examination of Officer Henderson at the hearing to elicit responses to his questions.  The undersigned also issued subpoenas for the appearance of two other Saint Louis Metropolitan Police Officers at the evidentiary hearing and those officers were present as defense witnesses.  Clark chose not to present those officers to testify.  *See* (*Transcript of Hearing*, pp. 115-16).  Finally, to the extent that he asks for rough notes, work schedules or information in personnel records, Clark has not established the he is entitled to such information.

*United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985).  Therefore, his point should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motions To Suppress Physical Evidence and Statements (Doc. Nos. 51, 65 and 71) **be denied**.

**IT IS HEREBY ORDERED** the United States of America's Motion For A Pretrial Determination Of The Admissibility Of Defendant's Statements Pursuant To Title 18, United States Code, Section 3501 (Doc. No. 10) **is denied as moot**.

**IT IS FURTHER ORDERED** that Defendant's Pro Se Motion For Additional Time To Obtain and Review Discovery Materials and To Determine Whether and/or What Pretrial Motions are to be Filed (Doc. No. 29) **is denied as moot.**

**IT IS FURTHER ORDERED** that Defendant's Pro Se Motion to Dismiss Without Prejudice (Doc. No. 30) **is denied.**

**IT IS FURTHER ORDERED** that Defendant's Motion For Termination Of Court Appointed Standby Counsel For Acting Without Pro Se Litigant's Consent Or Authorization (Doc. No. 33) **is denied as moot.**

**IT IS FURTHER ORDERED** that Defendant's Pro Se Motion For Leave To Supplement Previously Filed Motion To Dismiss Without Prejudice And Supporting Affidavit Based On The Erroneous Statements Adduced Within The Government's Response In Opposition Case Document No. #31 (Doc. No. 34) **is denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion For Bill of Particulars (Doc. No. 42) **is denied.**

**IT IS FURTHER ORDERED** that Defendant's Motion Of Opposition To Plaintiff's Document Forty-One Erroneously Claiming Defendant Already Submitted His Motion Of Suppression Yet In Fact The Defendant Has Not Filed A Motion To Suppress (Doc. No. 49) **is denied as moot.**

**IT IS FURTHER ORDERED** that Defendant's Motion For Extension Of Time To File Pretrial Motions (Doc. No. 50) **is denied as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion For Pretrial Determination For The Necessity To Prevent Police Officer Nicholas Henderson, A Witness For The Government From Stating Handcuffs Were Not Placed On Mr. Clark Prior To Any Pat Search Or Any Questions As Such Is Purjured [sic] Testimony Which If The United States Attorney Are Not Aware Of, They Should Be Equally Ensure [sic] A Fair, Speedy And Even Disposition Without Violating Constitutional Rights Upon An Order To Provide A Lie Detector Test Of Four Specific Questions To Both Mr. Clark And The Said Police Officer Mr. Henderson (Doc. No. 52) **is denied**.

**IT IS FURTHER ORDERED** that Defendant's Pro Se Motion For Leave To Supplement Previously Filed Motions To Dismiss Due To Substantial Constitutional Rights Being Violated Upon Exculpatory Evidence Withheld Equally Constituting Defects Instituting The Prosecution (Doc. No. 72) is **granted in part as to the obligations of the United States to disclose exculpatory evidence pursuant to *Brady v. Maryland* and progeny and it is denied in all other respects**.

**IT IS FURTHER ORDERED** that Defendant's Pro Se Post Suppression Hearing Motion Based Upon Evidence Adduced At The Evidentiary Hearing And/Or Brief (Doc. No. 79) **is denied.**

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Noelle C. Collins
United States Magistrate Judge

Dated this 1st day of March, 2017.